IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOOKXCHANGE FL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 CV 506 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| BOOK RUNNERS, LLC, | ) | |
| TOBIAS KAPLAN, and | ) | |
| ANDREW MCCOTTER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Amazon.com is an online market that allows multiple sellers to offer the same product. When multiple sellers offer the same product, they compete to be listed in the "Buy Box"—a box on the product's page from which customers add items to their online shopping cart:



Figure 1: Amazon Buy Box

In the example above, a seller would rather be in Tome Dealers's shoes—the winner of the Buy Box—than be lumped with a list of "other sellers." When a customer clicks "Add to Cart" without browsing the list of other sellers, the customer adds a product sold by the Buy Box winner. A seller thus increases its chances of selling a given product by winning that product's Buy Box. The seller cannot win, however, unless it has the product in stock and prices it competitively.

Plaintiff BookXchange FL, LLC ("BookXchange") and defendant Book Runners, LLC ("Book Runners") are rival textbook sellers on Amazon, and they compete for the Buy Box. Plaintiff alleges that Book Runners manipulates the Buy Box using fraudulent transactions. Book Runners allegedly orders books from plaintiff using false shipping addresses and false payment information. The scheme "locks up" plaintiff's inventory: if the shipping address is false, the book cannot be delivered; if the payment information is false, Amazon places the book on hold for days. Both methods temporarily reduce plaintiff's inventory. During that time, if a customer tries buy a textbook and plaintiff apparently (but falsely) does not have the book in stock, plaintiff cannot win the Buy Box. By ousting plaintiff, Book Runners eliminates a competitor and enjoys a greater chance of winning the Buy Box for itself, thus increasing its chance of making a sale.

That is, at least, what plaintiff alleges in its first amended complaint, which purports to state five claims: (1) conspiracy to restrain trade, in violation of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1; (2) conspiracy to restrain trade, in violation of the Illinois Antitrust Act, 740 ILCS 10/3(2); (3) fraud at common law; (4) fraud and deceptive practices, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("Consumer Fraud Act"); and (5) breach of the parties' prior settlement agreement, in which

Book Runners agreed not to manipulate the Buy Box. Book Runners moves to dismiss the case under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and moves to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, except that Book Runners does not challenge the claim that it breached the settlement agreement.

The motion to dismiss for lack of subject matter jurisdiction is denied. The amount in controversy here has four components: (1) lost profits; (2) pre-litigation attorney's fees; (3) injunctive relief; and (4) punitive damages. Because it does not appear to a legal certainty that the sum of these four components is $75,000 or less, and because the parties are citizens of different states, this court has diversity jurisdiction under 28 U.S.C. § 1332.

The motion to dismiss for failure to state a claim, however, is granted without prejudice. Plaintiff's federal and state antitrust claims fail because the complaint alleges that Book Runners conspired to restrain trade with defendants Tobias Kaplan and Andrew McCotter—Book Runners' own co-founders and members. A conspiracy among parties with identical economic interests does not violate the antitrust laws.

As for plaintiff's common law fraud and Consumer Fraud Act claims, they have not been pleaded with the particularity demanded by Fed. R. Civ. P. 9(b). Nor does plaintiff fall under Rule 9(b)'s exception. That exception applies only when the plaintiff lacks access to the facts underlying the fraud and explains the grounds for its suspicion. Plaintiff's own pleadings suggest that it has access to enough sales and shipping information to allege the fraudulent orders with particularity. And although plaintiff might lack access to facts underlying its other theory of fraud—that Book Runners places orders with the intent to cancel them—plaintiff's explanation for its suspicion is inadequate. If pleaded with particularity, however, the common law fraud and

Consumer Fraud Act claims would likely avoid dismissal. Plaintiff is therefore granted leave to file a second amended complaint.

## DIVERSITY JURISDICTION

The court has jurisdiction over this case if it arises under federal law, 28 U.S.C. § 1331, or if it involves citizens of diverse states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. Because plaintiff alleges that Book Runners violated a federal law—the Sherman Act—this court has federal question jurisdiction. Book Runners argues, however, that plaintiff fails to state a claim under the Sherman Act—and argues that the court, if it agrees, should, (1) find that it lacks diversity jurisdiction because the amount in controversy does not exceed $75,000, and (2) decline to exercise supplemental jurisdiction over plaintiff's state law claims, 28 U.S.C. § 1367(c)(3).

The court agrees that plaintiff fails to state a claim under the Sherman Act, but finds that the amount in controversy exceeds $75,000. The proponent of federal jurisdiction need establish only by "a preponderance of the evidence facts that suggest the jurisdictional amount has been satisfied." Carroll v. Stryker Corp., 658 F.3d 675, 680 (7th Cir. 2011). Once those facts have been established by the proponent of federal jurisdiction, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938). This jurisdictional inquiry allows the court to go beyond the complaint. Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443–44 (7th Cir. 2009).

The amount in controversy here has four components: (1) lost profits; (2) pre-litigation attorney's fees; (3) injunctive relief; and (4) punitive damages. The last component, punitive damages, is key—Illinois law allows punitive damages for common law torts and for violations

4

of the Consumer Fraud Act, Kirkpatrick v. Strosberg, 385 Ill. App. 3d 119. 132–33 (Ill. App. 2008), and allows "single-digit ratio[s] between punitive and compensatory damages." International Union of Operating Engineers, Local 150 v. Lowe Excavating Co., 225 Ill. 2d 456, 483–84 (2006), quoting State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 424–25 (2003). "[P]articularly egregious conduct" can warrant ratios that are even higher. International Union, 225 Ill. 2d 456 at 486 (reversing a punitive damages award at a 75 to 1 ratio, and commenting that a $50,000 award at "a double-digit ratio of approximately 11 to 1, would be reasonable and constitutional," given that the defendant's "conduct was minimally reprehensible . . . ."); see also, e.g., Mathias v. Accor Economy Lodging, Inc., 347 F.3d 672, 678 (7th Cir. 2003) (affirming, in a diversity suit governed by Illinois law, punitive damages of $186,000 and compensatory damages of $5,000 for each plaintiff—a ratio of 37.2 to 1—when the defendant hotel had misled its guests about bedbugs and had refused to fumigate the building).

Even if Book Runners' conduct was only "minimally reprehensible," and thus warranted punitive damages at a ratio of 11 to 1, International Union, 225 Ill. 2d 456 at 486, plaintiff would need to allege compensatory damages exceeding just $6,250 (one-twelfth of $75,000) to satisfy the amount in controversy requirement. With that target amount in mind, the court assumes, for determining jurisdiction (as does Book Runners, begrudgingly), that plaintiff lost, at most, $1,828.09 in profits. What remains is the difference between $6,250 and $1,828.09—$4,421.91. That amount must be exceeded by the sum of two categories of damages: (1) plaintiff's pre-litigation attorney's fees, and (2) the value of an injunction barring Book Runners from ordering plaintiff's books.

| | |
|---|---|
| Lost profits | $ 1,828.09 |
| Attorney's fees + injunction | **$ 4,421.91** |
| Compensatory damages | $ 6,250.00 |
| Punitive damages (11 to 1 ratio) | $ 68,750.00 |
| Amount in controversy | $ 75,000.00 |

Figure 2: Amount in controversy computation

The complaint's allegations suggest that plaintiff's pre-litigation attorney's fees, plus the value of an injunction, would exceed $4,421.91. Although Book Runners persuasively argues that the value of an injunction might well be zero—it has a record of placing hundreds of legitimate and presumably profitable orders with plaintiff—Book Runners concedes that, "[p]erhaps BookXchange incurred a few thousand dollars in attorney's fees before filing the complaint . . . ." $4,422 is all plaintiff needs to satisfy the jurisdictional amount. Plaintiff's claims, of course, may have no merit—and if so, plaintiff may never recover any fees—but "[d]istrict courts should not get bogged down . . . in evaluating claims on the merits to determine if jurisdiction exists." Carroll, 658 F.3d at 681.

Because it does not appear to a legal certainty that the amount in controversy is $75,000 or less, and because the parties are citizens of different states, this court has diversity jurisdiction under 28 U.S.C. § 1332 and cannot relinquish jurisdiction over plaintiff's state law claims. Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 716 (1996) ("[F]ederal courts have a strict

duty to exercise the jurisdiction that is conferred upon them by Congress."). Book Runners' motion to dismiss for lack of subject matter jurisdiction—which, properly construed, is a motion for this court to decline supplemental jurisdiction if it dismisses plaintiff's Sherman Act claim—is therefore denied.

## DISCUSSION

Book Runners' next challenge is to the legal sufficiency of plaintiff's complaint. Book Runners moves to dismiss plaintiff's claims for: (1) conspiracy to restrain trade under the Sherman Act and the Illinois Antitrust Act; (2) fraud at common law; and (3) fraud and deceptive practices under the Illinois Consumer Fraud and Deceptive Practices Act. To survive the motion to dismiss, the complaint must allege facts that state a "plausible" claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the court, taking the alleged facts as true, can reasonably infer that the defendant is liable. Id.

### 1  Sherman Antitrust Act and Illinois Antitrust Act

Book Runners first moves to dismiss plaintiff's claim that Book Runners violated section 1 of the Sherman Act. Plaintiff alleges that Book Runners conspired to restrain trade with defendants Tobias Kaplan and Andrew McCotter—co-founders and members of Book Runners. Kaplan, McCotter, and Book Runners, however, are the same economic actors and have the same economic interests. A conspiracy among them does not violate the Sherman Act.

Under the Sherman Act, economic actors can conspire to restrain trade only when their economic interests are independent. When independent economic actors so conspire, they "deprive the marketplace of independent centers of decisionmaking that competition assumes and demands." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 769 (1984).

Economic actors do not, however, conspire to restrain trade when they have "a complete unity of interest." Id. at 771. Because Book Runners is a legal entity composed of its members—Kaplan and McCotter—the three of them are economic actors with a unity of interest. They cannot conspire to restrain trade.

In opposing dismissal, plaintiff does not argue otherwise. Instead, plaintiff raises an alternative theory that does no better: Book Runners conspired with unnamed software developers that supplied the tools Book Runners needed for its anticompetitive scheme. This alternative theory has many problems. First, plaintiff does not identify who these software developers are or how their programs furthered Book Runners' scheme; second, developers who supply automated pricing programs do not compete in the textbook market. The theory's most basic problem, however, is that its underlying facts appear nowhere in plaintiff's complaint, and facts outside of the complaint cannot be considered on a motion to dismiss for failure to state a claim. Powe v. Chicago, 664 F.2d 639, 642 (7th Cir. 1981).

Plaintiff thus fails to state a claim under the Sherman Act. That, in turn, dooms its claim under the Illinois Antitrust Act, 740 ILCS 10 et seq. Both the federal Sherman Act, 15 U.S.C. § 1, and the Illinois Antitrust Act, 740 ILCS 10/3(2), forbid conspiracies to restrain trade—and Illinois courts "use the construction of federal antitrust law by federal courts to guide their construction of those state antitrust laws that are substantially similar to federal antitrust law." Illinois v. Panhandle Eastern Pipe Line Co., 935 F.2d 1469, 1480 (7th Cir. 1991), citing 740 ILCS 10/11. The Illinois Antitrust Act claim falls with the Sherman Act claim.

## 2  Common law fraud

Next, Book Runners moves to dismiss plaintiff's claim for common law fraud. A fraud claim has five elements: (1) the defendant made a false statement of a material fact; (2) the

defendant knew the statement was false; (3) the defendant intended for the statement to induce the plaintiff to act; (4) the plaintiff relied on the truth of the statement; and (5) the plaintiff was damaged by relying on the statement. Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 496 (Ill. 1996). The complaint alleges that when Book Runners ordered plaintiff's books on Amazon, Book Runners gave Amazon false shipping addresses and false payment information. Book Runners argues that the fraud allegations: (1) have not been pleaded with the particularity required by Fed. R. Civ. P. 9(b); (2) raise no inference of a false statement; and (3) raise no inference that plaintiff relied on the truth of a false statement.

### 2.1 Particularity

For the most part, the fraud claim fails because plaintiff has not stated the fraud's circumstances with particularity. Fed. R. Civ. P. 9(b). Plaintiff identifies six "fake purchases" made by Book Runners—and, for each purchase, lists the date, order number, title, order quantity, unit price, and total order amount—but does not identify: the false statements on which those purchases relied; who made the false statements; and which purchases used false shipping addresses and which used false payment information. Those details are mandatory. See, e.g., Rocha v. Rudd, 826 F.3d 905, 911 (7th Cir. 2016) (affirming the dismissal of a fraud claim under Rule 9(b) because the plaintiff "fail[ed] to provide the specific names, dates, times, or content of the misrepresentations or omissions that give rise to the alleged fraud.").

True enough, Rule 9(b)'s heightened pleading requirements are relaxed when the plaintiff lacks access to the facts underlying the fraud and explains the grounds for its suspicion. Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co., 631 F.3d 436, 443 (7th Cir. 2011). That plaintiff lacks access to the underlying facts, however, is implausible. Attached to plaintiff's complaint is a declaration from one of its employees, Zachary Langstein. Langstein,

who analyzes Amazon sales data: (1) states that Book Runners "appear[s] to have used false shipping addresses"; (2) gives an example of an order that "was shipped but returned as 'Undeliverable'"; and (3) attaches an exhibit showing the allegedly false shipping address. If plaintiff can supply such details for one order, it can do so for other orders. The declaration shows that plaintiff has access to the facts underlying Book Runners' alleged fraud from the shipping and payment information for Book Runners' allegedly fraudulent orders. The exception to Rule 9(b)'s heightened pleading requirements thus does not apply, and plaintiff's fraud claim turns on the sole order pleaded with particularity.

Although the order described in Langstein's declaration is alleged with enough particularity to satisfy Rule 9(b), it raises no plausible inference of fraud. That order was placed on October 14, 2018, and listed defendant Andrew McCotter, a member of Book Runners, as recipient. As stated in the complaint, Book Runners' address is 4050 N. Rockwell, Chicago, IL 60618. The order described by Langstein, however, listed an address that did not quite match:

| Shipping service | Standard |
| --- | --- |
| Ship by | Thu, Oct 25, 2018 |
| Ship to | Andrew McCotter<br>4050 N ROCKWELL ST UNIT 1 UNIT 1<br>CHICAGO, IL 60618-3721 |
| Purchase date | Sun, Oct 14, 2018, 12:27 PM PT |
| Fulfillment | Amazon |

Figure 3: Plaintiff's example of a false shipping address (highlights added by plaintiff)

Plaintiff alleges that this order was shipped but returned as "Undeliverable." According to plaintiff, this is an example of Book Runners using "false shipping addresses" to "lock up" plaintiff's inventory. To sustain a fraud claim, however, the false statement must be material—yet, as plaintiff's own complaint alleges, the street address, city, and zip code were all accurate.

10

Although the court could possibly infer that erroneously duplicating "Unit 1" makes the shipping address materially false, that inference would not be plausible.

Fraud also requires intent. If Book Runners intended to lock up plaintiff's inventory by sending packages to false addresses, those addresses were false in ways that apparently were inexplicably subtle. Did Book Runners hope that the Amazon delivery driver would go to 4050 N Rockwell and give up because he could find no building unit labeled "Unit 1 Unit 1"? Perhaps so, but evaluating a claim for plausibility requires the court to use "judicial experience and common sense," Iqbal, 556 U.S. at 679, and doing so here makes it implausible to infer an intent to defraud.

Rule 9(b) "screen[s] against spurious fraud claims" by encouraging plaintiffs to conduct "a careful pretrial investigation," Fidelity National Title Insurance Co. of New York v. Intercounty National Title Insurance Co., 412 F.3d 745, 749 (7th Cir. 2005), and a careful pretrial investigation has not been done here. Plaintiff could have provided other examples of Book Runners placing orders using false shipping addresses; it did not do so. Because the only allegedly fraudulent order stated with particularity fails to raise a plausible inference of fraud, the court is left with the fraud's "how"—but without the fraud's "what" or "when." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). Plaintiff's failure to allege those details contravenes Rule 9(b) and requires dismissal of its fraud claim.

### 2.2 False statement

Although plaintiff's Rule 9(b) deficiencies are reason enough to dismiss the fraud claim, those deficiencies might be cured in an amended complaint. The court therefore addresses Book Runners' other arguments for dismissal.

Book Runners contends that the complaint fails to allege false payment information. The court disagrees. Paragraph 13 of the complaint alleges that Book Runners, "ensure[s] that Amazon's systems are not able to complete the transaction," by "providing bad information, such as an incorrect credit card number or a wrong address . . . ." If Book Runners used an "incorrect" credit card number, it made a false statement. Even so, argues Book Runners, the credit card numbers "must have been valid or else the orders would not have posted in the first place." That assumption—although reasonable—is neither alleged in the complaint, nor raised in a request for judicial notice. Without that assumption, it is reasonable to infer that orders can post even when placed using incorrect credit card numbers.

### 2.3 Reliance

Book Runners also argues that that it was not plaintiff that relied on the allegedly false statements—it was Amazon—and the complaint does not allege that Amazon was plaintiff's agent. Although the court agrees that the complaint contains no such allegations of agency, that is not dispositive: "traditional privity [is] not a requirement in fraud actions," Shannon v. Boise Cascade Corp., 208 Ill. 2d 517, 526 (Ill. 2004); "[i]t is enough that the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage." Id., quoting St. Joseph Hospital v. Corbetta Construction Co., 21 Ill. App. 3d 925, 954 (Ill. App. 1974). Book Runners' allegedly false payment information and false shipping addresses fit that requirement. Book Runners ordered plaintiff's books on Amazon using false information; Amazon marked those books "sold"; plaintiff, relying on Amazon's marking of those books as "sold," did not cancel Book Runners' orders; those orders depleted plaintiff's inventory; plaintiff's depleted inventory made plaintiff ineligible to win the Buy Box. That is reliance.

**3     Illinois Consumer Fraud and Deceptive Business Practices Act**

Last, Book Runners moves to dismiss plaintiff's claim under the Consumer Fraud Act, which prohibits "unfair or deceptive acts or practices . . . ." 815 ILCS 505/2. According to Book Runners, plaintiff, (1) has again failed to plead with particularity, and (2) lacks standing to sue.

**3.1     Particularity**

As discussed, plaintiff must replead its claim for common law fraud because it can likely uncover enough about Book Runners' use of false information to plead the fraud's "who, what, when, where, and how . . . ." DiLeo, 901 F.2d at 627. A claim under the Consumer Fraud Act, which sounds in fraud, must likewise meet Rule 9(b)'s heightened pleading requirements. See, e.g., Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 736–37 (7th Cir. 2014). Plaintiff's failure to plead with particularity might appear to defeat plaintiff's Consumer Fraud Act claim as surely as it defeats plaintiff's claim for common law fraud.

The Consumer Fraud Act, however, gives plaintiff an additional opportunity to meet Rule 9(b)'s particularity requirement. Unlike fraud at common law, the Consumer Fraud Act broadly prohibits "unfair or deceptive acts or practices," 815 ILCS 505/2; no false statement is required. Martin v. Heinhold Commodities, Inc., 163 Ill.2d 33, 49–52 (Ill. 1994). Book Runners allegedly ties up a competitor's inventory by placing orders with the intent that those orders end up unfulfilled. Placing such orders, even using genuine shipping addresses and payment information, plausibly is unfair or deceptive. Cf. 7 U.S.C. § 6c(a)(5)(C) (making it a criminal offense to place a bid or offer on a futures contract "with the intent to cancel the bid or offer before execution"). By placing orders using genuine information, Book Runners ties up plaintiff's inventory without leaving a paper trail of false shipping addresses and payment information. That leaves plaintiff unable to identify the orders that Book Runners intended

13

always to cancel, and the orders that Book Runners placed honestly, but later canceled for legitimate reasons.

Plaintiff's inability to identify Book Runners' deceptive orders suggests that plaintiff lacks access to the scheme's underlying facts. Still, plaintiff must then explain the grounds for its suspicion. To do so, plaintiff alleges two facts: (1) although "[t]ypical transaction[s] on Amazon clear and ship within minutes or hours of the original order," six orders placed by Book Runners were "'pending' for a significant length of time"—and were "ultimately canceled"; and (2) while those six orders were pending, Book Runners held "the lead position in the 'Buy Box.'"

As pleaded, these facts raise no plausible inference of suspicion. Why is it suspicious for the six orders to have pended for a "significant" time? How much longer were they pending compared to similar orders? How unusual is it for some orders to pend longer than others—is the distribution of pend times normal, or uniform? If the pend times were unusually long, were innocent explanations possible? The complaint fails to answer these questions. Plaintiff's second fact raises yet more questions that go unanswered: Why is it suspicious for Book Runners to have won the Buy Box while the six orders pended? After all, although plaintiff alleges that Amazon "typically" lists its books in the Buy Box before listing those sold by Book Runners, plaintiff does not allege that for these six orders, Book Runners' scheme caused plaintiff to lose the Buy Box. Without context, plaintiff's two facts fail to explain the grounds for its suspicion. See Pirelli, 631 F.3d at 444–45 (affirming the dismissal of a price-gouging claim sounding in fraud and rejecting the plaintiff's grounds for suspicion because the drug reimbursement data on which the plaintiff relied were "not placed . . . in context," and "their free-floating nature stymie[d] any meaningful understanding of what the numbers mean[t]").

At best, plaintiff's allegations may be consistent with a scheme to place deceptive orders—but equally consistent with bad lines of code in Amazon's inventory management system, or with orders mistakenly placed by a bumbling Book Runners employee. Equivocal inferences make for implausible claims. Cf. Twombly, 550 U.S. at 554 (holding that a complaint failed to state a plausible claim for Sherman Act conspiracy because of "the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market"); Iqbal, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (citation, alteration, and quotation marks omitted). Plaintiff must do more—gather more data, place them in context, and explain why they raise suspicion—to justify falling short of Rule 9(b)'s heightened pleading requirements. Fidelity, 412 F.3d at 749.

### 3.2 Standing

Failure to plead with particularity warrants dismissal of plaintiff's Consumer Fraud Act claim. That failure, however, is curable. The court thus considers—and rejects—Book Runners' challenge to plaintiff's standing to sue.

When a business sues under the Consumer Fraud Act, it "must show a nexus between the complained of conduct and consumer protection concerns"; it must satisfy the "consumer nexus test." Community Bank of Trenton v. Schnuck Markets, Inc., 887 F.3d 803, 822–23 (7th Cir. 2018). Not every business dispute satisfies that test. Broken promises, for example, are not actionable, for "[t]hat type of 'misrepresentation' occurs every time a defendant breaches a contract." Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 169–70 (Ill. 2005) (citation and quotation marks omitted). Nor can a business satisfy the consumer nexus test

by disguising a breach of contract claim as a consumer fraud claim. See, e.g., Classic Business Corp. v. Equilon Enterprises, LLC, No. 09 C 7735, 2011 WL 290431, at *4–5 (N.D. Ill. Jan. 27, 2011) (dismissing a Consumer Fraud Act claim for lack of standing because the defendants' alleged plan "to drive [the plaintiffs] out of business" was "simply a restatement" of the plaintiffs' breach of contract claim).

Plaintiff has standing to sue under the Consumer Fraud Act. Book Runners' scheme plausibly affects consumer prices for textbooks: by deposing a seller from the Buy Box, Book Runners artificially reduces the supply of textbooks, thus causing prices to rise, and consumers to pay above-market prices. See Walsh Chiropractic, Ltd. v. StrataCare, Inc., 752 F. Supp. 2d 896, 913 (S.D. Ill. 2010) (recognizing a business's standing to sue under the Consumer Fraud Act when the defendant allegedly helped a healthcare network administrator submit fraudulent claims for discounted healthcare rates, reasoning that "patients of medical providers (i.e. actual consumers at large) may be affected by [the defendant's] alleged fraudulent claims . . . via fee increases needed to cover their providers decreased income"). A successful Consumer Fraud Act action might well "serve the interests of consumers," Brody v. Finch Univ. of Health Sciences/The Chicago Medical School, 298 Ill. App. 3d 146, 160 (Ill. App. 1998), by restoring prices to their competitive equilibrium, and by deterring Book Runners—and other textbook sellers—from engaging in inventory lockup schemes. Unlike courts deciding contract disputes disguised as fraud claims, this court need not speculate to infer that the deceptive practices alleged here implicate consumer protection concerns. Plaintiff satisfies the consumer nexus test and has standing to sue under the Consumer Fraud Act.

## **CONCLUSION**

Defendant Book Runners' motion to dismiss for lack of subject-matter jurisdiction (Doc. 9) is denied. Book Runners' motion to dismiss Count I (fraud), Count II (Illinois Consumer Fraud and Deceptive Business Practices Act), Count IV (Sherman Antitrust Act), and Count V (Illinois Antitrust Act) for failure to state a claim (Doc. 12) is granted.

Plaintiff BookXchange is granted leave to file a second amended complaint by May 23, 2019. The hearing previously set for May 1, 2019, is continued to May 30, 2019, at 9:00 a.m.

**ENTER:** **April 25, 2019**

_____
**Robert W. Gettleman**
**United States District Judge**