IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **BookXchange FL, LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 19 C 506 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| **Book Runners, LLC, Tobias Kaplan,** | ) | Magistrate Judge Finnegan |
| **and Andrew McCotter,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

On February 27, 2020, this Court held a hearing on Defendants' Motion to Compel and for Other Relief and took the motion under advisement. (Docs. 115, 117). Pursuant to the Court's orders (Docs. 117, 119, 136), the parties conferred on several issues and, unable to resolve their differences, Defendants filed their Supplement to Defendants' Motion to Compel and for Other Relief (Docs. 139, 141), and Plaintiff filed its response (Docs. 154, 155).[1] Defendants now move to compel Plaintiff to produce all documents responsive to Request for Production Nos. 1, 3, 7, and 8 and Interrogatory No. 7. (Doc. 141, at 11). They also seek a sworn declaration setting forth Plaintiff's search methods, a second deposition of Plaintiff's corporate representative under Federal Rule of Civil Procedure 30(b)(6), and fees and costs for this motion. (*Id.*). For the reasons set forth below, Defendants' Motion to Compel and for Other Relief (Doc. 115) is granted in part and denied in part.

---

[1] Where the record contains both a redacted public version of a document and an unredacted sealed version, this Court cites the public version unless the relevant portion of the document is sealed.

## **BACKGROUND**

The parties are competing sellers of textbooks on amazon.com. (Doc. 58, at 1-2). Plaintiff alleges that Defendants engaged in fraudulent transactions to gain a competitive advantage, and Defendants deny this. (*See id.*; Doc. 127, at 3). Plaintiff previously sued Defendants in August 2018, the parties entered into a settlement agreement on August 28, 2018 to resolve that litigation, and the case was dismissed with prejudice on December 7, 2018. (Doc. 127, at 4). Under the settlement agreement, Defendants represented and warranted that they would not "engage in any scheme to 'lock up' BookXchange's inventory or manipulate the Amazon 'buy box.'" (*Id.*). And Plaintiff, for its part, agreed to " . . . make all commercially reasonable efforts to cause its officers, directors, managers, members, employees, principals and agents not to make any public disparaging statement regarding Defendants." (Doc. 115, at 1.)

In this new lawsuit, Plaintiff alleges claims for fraud, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, and breach of the settlement agreement based on Defendants' alleged systematic creation of fake orders to tie up Plaintiff's book inventory so Defendants could sell their inventory of the same books. (Doc. 127, at 1). Defendants claim as a defense (in part) that Plaintiff breached the parties' settlement agreement by disparaging them. (*Id.* at 18; *see* Doc. 115, at 1-2). Defendants' pending Motion to Compel and for Other Relief pertains to Plaintiff's response to discovery requests about the claimed disparagement and breach of the settlement agreement (Request for Production Nos. 1, 3, 7, and 8 and Interrogatory No.

7). (Doc. 115, at 1-2).[2] Specifically, Defendants challenge the completeness of Plaintiff's document production based on the omission of emails to and from its former employee, Michael Dudley. (Doc. 115, at 2-5; Doc. 139, at 2-4).

It is undisputed that Plaintiff's document production was incomplete, but Plaintiff subsequently conducted additional keyword searches, produced some additional documents, supplemented its privilege log, provided a chart explaining its initial failure to locate certain documents, and represented that the production is complete. (Doc. 149, at 6, 8-9; Doc. 155, at 2, 4-5). What the parties dispute, however, is whether Plaintiff's search for responsive documents was a reasonable one, and so its document production is now complete. (*See* Doc. 149, at 9, 15, 17, 23).

## **DISCUSSION**

### I. Plaintiff's Document Production

In late May 2019, Defendants informed Plaintiff that an email chain produced by Plaintiff was not complete. (Doc. 115, at 2-3). Specifically, an email chain dated January 7, 2019 included an earlier email dated December 27, 2018 from Dudley that referenced certain attachments; however, Plaintiff had not produced those attachments nor the original Dudley email. (*Id.*; Doc. 115-3). Dudley had sent this email on December 27, 2018 from a domain that "he personally controlled" (primedealer246.com) to an individual at Amazon and to one of Plaintiff's employees, Doriah Zaret. (Doc. 115, at 2-3; Doc. 115-4, at 2; Doc. 139, at 3). The email also was forwarded to two other of Plaintiff's employees, Zachary Langstein and Boris Kerzhner. (Doc. 141, at 2; Doc. 115-4, at 2).

---

[2] For the interrogatory, subject to objections, Plaintiff stated that "this request is better responded to by referring to documents in accordance with FRCP 33(d) which BookXchange will produce." (Doc. 115-2, at 16).

3

In mid June 2019, Plaintiff explained to Defendants that it was unable to produce the email and attachments because it did not have access to Dudley's email since he had "not been an employee for some time." (Doc. 115, at 3; Doc. 115-6). In late November 2019, Defendants noted that Zaret also was a recipient of "the Michael Dudley email[,]" and Plaintiff confirmed that Zaret's email account had been searched and promised to "look into this and get back to you shortly" but, as of mid January 2020, had not done so. (Doc. 115, at 3; Doc. 115-9). In late January 2020, Plaintiff reported that, though Zaret's email was collected, "the Michael Dudley email" was not in the review database so counsel was searching Zaret's email and expected a resolution "in the next few days." (Doc. 115, at 3; Doc. 115-10, at 2).

On February 4, 2020, Defendants then produced to Plaintiff a number of emails that Defendants had recently obtained directly from Dudley. (Doc. 115, at 4). These emails seemingly should have been produced by Plaintiff, as Dudley had sent some of them to Plaintiff's employees while others were sent by employees with a copy to Dudley who was at the time still employed by Plaintiff. (*Id.*; Doc. 115-13, at 2, 5, 7-11; Doc. 141, at 3).[3] On February 6, 2020, Plaintiff informed Defendants that it was "taking every step to locate the [December 27, 2018] email, and to ensure that any additional relevant and responsive documents are located and promptly produced (to the extent they exist)" and promised "a substantive response on the Michael Dudley issue" the next day. (Doc. 115, at 4; Doc. 115-12, at 1-3). On February 11, 2020, Plaintiff made a supplemental

---

[3] The Court notes that these emails contain a different email address for Dudley (@ecommd.com) than that used to send the December 27, 2018 email (@primedealer246.com). For simplicity, this order refers to the collection of emails produced by Defendants on February 4, 2020 as the "other Dudley emails."

4

production of the December 27, 2018 Dudley email and its attachments, but not the other Dudley emails that Defendants recently had produced to Plaintiff. (Doc. 115, at 4-5).

On February 13, 2020, Defendants sent a Rule 37 letter regarding Plaintiff's failure to produce its copies of the other Dudley emails and demanded a written response and supplemental production by February 17, 2020. (Doc. 115, at 5; Doc. 115-14). Plaintiff instead proposed responding by February 24, 2020 but did not do so. (Doc. 115, at 5; Doc. 115-15). Defendants then filed their motion to compel on February 25, 2020. (Doc. 115; Doc. 141, at 3; Doc. 155, at 1-2). On February 26, 2020, Plaintiff served a supplemental privilege log identifying (according to Defendants) "at least some of the documents that Dudley had produced [to Defendants] as privileged." (Doc. 141, at 3; Doc. 141-8). On March 6, 2020, Plaintiff produced two more documents (seemingly unrelated to the current disputes) and another supplemental privilege log. (Doc. 155, at 2, 4-5; Doc. 155-4).[4] Plaintiff also provided a chart ("the March 6, 2020 Chart"), explaining the reasons for the previous omission of 23 newly-produced documents that reportedly were located when Plaintiff "re-ran our keyword searches[,]" and concluding that Plaintiff did not believe there are additional responsive documents "based on the revised searching." (Doc. 155, at 2, 4-5; Doc. 155-4). Plaintiff now reiterates in opposition to this motion to compel that it "does not believe that there are any additional responsive documents to Defendants['] request." (Doc. 155, at 2).

---

[4] Defendants discuss Plaintiff's work product objections regarding "documents listed on its second supplemental privilege log" (Doc. 141, at 8-11), but the parties separately briefed this issue and the Court will address it in a separate order.

5

## II. Plaintiff's Search for Documents

Plaintiff claims that the discrepancy between the results of the initial and updated searches was due to the initial failure to locate documents that contained a misspelling or alternate spelling (e.g., "TomeDealer" instead of "Tome Dealers" or "BookRunners" instead of "Book Runners"). (Doc. 155, at 2, 5-6). At the February 27, 2020 court hearing, Plaintiff attributed the error to its e-discovery vendor but said it was "comfortable [with the production] now that we've done a complete search." (Doc. 149, at 8-9, 11). Defendants, on the other hand, challenge the adequacy of Plaintiff's proffered reason for the omission of documents, so question whether a reasonable and complete search has now been done. (Doc. 139, at 5-8).

Plaintiff's shifting explanations and lack of information about the search indeed raise questions. First, it is undisputed that, despite agreeing in March 2020 to provide "a list of keyword searches[,]" Plaintiff acknowledged in June 2020 that it has no record of the original search terms despite having used a well-known vendor. (Doc. 141, at 4-7; Doc. 141-11, at 2, 3, 5; Doc. 155, at 2, 5-6).[5] Plaintiff dismisses the significance of this reversal because "one can still easily determine how the original keywords were structured simply by examining the misspellings and alternate spellings found in the supplemental production" and emphasizes that Defendants "have expressed no concerns regarding the *updated* search terms." (Doc. 155, at 2-3, 5-6) (emphasis in original). But Plaintiff appears not to have provided even the updated search terms to Defendants, for

---

5    Plaintiff identified the vendor as FTI Consulting. (Doc. 141, at 4, citing Doc. 149, at 4). Defendants assert that they were told by Plaintiff during a discovery conference that a former employee (Langstein), not the vendor, performed the original searches. (Doc. 141, at 4-7). According to Plaintiff, the vendor "worked with" a former employee (who Plaintiff does not name) "to run" the searches. (Doc. 155, at 6). The Court notes that, despite the vendor's involvement, Plaintiff nonetheless is reportedly unable to provide a list of the original search terms.

the pending motion seeks (in part) an order requiring Plaintiff to provide a sworn declaration setting forth its search methods. (*See* Doc. 141, at 11).

Typically, parties confer about search terms and custodians *before* running electronically stored information ("ESI") searches to ensure transparency and avoid the potential need for new searches if there is a dispute about the process after the search has been completed. Conferring in this manner is especially important where, as here, the original search protocol missed a number of responsive documents, and Plaintiff has no record of what search terms were used. Apparently unwilling to share information about the updated search process, Plaintiff nonetheless asks Defendants (and the Court) to accept the assurance that the search was effective and that Plaintiff has now produced the responsive documents.

A second cause for concern, though, is that it is undisputed that one of the attachments to the December 27, 2018 Dudley email, a PowerPoint titled "BookRunners Fraud 12-26-18 Draft.pptm[,]" contains the terms "Book Runners" and "Tome Dealers" spelled correctly with a space between each word yet was not initially produced. (Doc. 115-5, at 3, 6, 7, 15, 19, 21, 22, 24; Doc. 141, at 5-6; Doc. 155, at 6; Doc. 155-4, at 3).[6] This undermines Plaintiff's explanation for why the document was not uncovered in the first search. Plaintiff dismisses this point because it "already" explained that "the initial keyword searches were directed to [Plaintiff's] email system, and did not pick up attachments to emails." (Doc. 155, at 6, citing Doc. 155-4). In support, Plaintiff relies on its March 6, 2020 Chart that purported to explain how the new search turned up

---

[6] The file name appears on the copy of the December 27, 2018 Dudley email attached to Dudley's declaration and on Plaintiff's March 6, 2020 Chart. (Doc. 115-5, at 24; Doc. 155-4, at 3).

7

documents that the old search had missed. (Doc. 155-4). But the chart entries do not indicate that the initial search was directed to the email system and so did not pick up email attachments. (*See id.*) To the contrary, the chart entry begins by identifying the PowerPoint as an attachment to the December 27, 2018 Dudley email listed at Tab No. 1 of the chart ("This document is an attachment to the correspondence at Tab No. 1."). (*Id.* at 3). And it continues by describing the problem of failing to search for alternate spellings ("The document title uses the term 'BookRunners' as one word. We understand that keyword search [initially] failed to account for 'Tome Dealers' and 'Book Runners' without the space. This document was produced on 2/6/2020."). (*Id.*). Notably, the chart does not state that the keyword searches "did not pick up attachments to emails" as Plaintiff now claims. (*See id.*) Given this, the Court is not persuaded that Plaintiff has sufficiently identified the reason the Dudley documents were missed in the initial search. This heightens the risk that the unidentified problem was not fixed in the updated search, and so responsive documents still have not been produced.

Indeed, Defendants have identified one responsive document that Plaintiff still has neither produced nor listed on its privilege logs—a PowerPoint (also titled "BookRunners Fraud 12-26-18 Draft.pptm"). (Doc. 141, at 8 n.2; Doc. 139, at 9, Doc. 115-5, at 30). This document was attached to an email dated December 26, 2018 from Plaintiff's employee Langstein to Dudley and another employee, Isaac Kasztl, and copied to employees Kerzhner and Zaret. (Doc. 115-5, at 30). Defendants seek this PowerPoint since Plaintiff never produced this attachment, logged it as withheld on privilege grounds, or otherwise accounted for its absence from Plaintiff's production. (Doc. 141, at 8 n.2). Plaintiff says nothing about this document in its response to the motion, so the Court concludes that

8

Plaintiff neither produced it nor identified it on a privilege log as being withheld. The omission of this document undercuts Plaintiff's suggestion that its updated search protocol successfully encompassed email attachments.

For all of these reasons, the Court is granting the motion to compel Plaintiff to produce all responsive documents sought in Document Request Nos. 1, 3, 7, and 8 and Interrogatory No. 7. While Plaintiff believes it has already done so, Defendant has identified at least one document ("BookRunners Fraud 12-26-18 Draft.pptm" attached to the December 26, 2018 email) that has not been produced or identified on a privilege log. Given this, as well as the lack of transparency in the original and updated search process, the Court is persuaded that the order is appropriate. For similar reasons, the Court is ordering Plaintiff to provide to Defendants (by December 3, 2020) a written list of the search terms and custodians used in the updated search. To the extent the parties have any further disputes as to the ESI production, they are to identify these in a joint status report no later than December 21, 2020.

### III.  Plaintiff's Rule 30(b)(6) Deposition

In addition to complaining that Plaintiff has not adequately searched for responsive emails, Defendants argue that the deposition testimony of Plaintiff's Rule 30(b)(6) witness (Langstein) was unreliable. Specifically, as to third-party communications "pertaining to criticism or complaints" about Defendants (Topic 6), they contend that the witness "denied knowledge of" (a) any criticism or complaint about Defendants and (b) the PowerPoint attached to the December 27, 2018 Dudley email. (Doc. 139, at 7-8). The Court finds that Defendants read the testimony too narrowly. The deponent acknowledged that Plaintiff "opened a case at Amazon" about Defendants, but said he was not involved in

9

creating the case and took issue with counsel's use of the term "complaint" to describe it. (Doc. 154-1, at 5-8). The deponent also was shown a copy of the December 27, 2018 Dudley email (of which he was not a recipient), which refers to "[t]he attached power point" but does not identify the file by name, and he acknowledged that he had seen a PowerPoint about Defendants (which was an exhibit to a declaration he had made) but did not know whether it was the same document referenced in the email. (Doc. 154-1, at 7-8; Doc. 139-5, at 8-9). As such, the Court concludes that the testimony does not support Defendants' assertion that the witness was unreliable, and so the request for an order compelling a second deposition of the corporate representative (at Plaintiff's expense) is denied.

## **CONCLUSION**

For all of the foregoing reasons, Defendants' Motion to Compel and for Other Relief (Doc. 115) is granted in part and denied in part as follows. Plaintiff is to (a) produce all responsive documents sought in Document Request Nos. 1, 3, 7, and 8 and Interrogatory No. 7 to the extent it has not already done so, and (b) provide Defendants with a written list of the search terms and custodians used in the updated search by December 3, 2020. To the extent the parties have any further disputes as to the ESI production, they are to identify these in a joint status report no later than December 21, 2020. The motion is denied at this time in all other respects.

ENTER:

Dated: November 30, 2020

*Sheila Finnegan*
SHEILA FINNEGAN
United States Magistrate Judge